IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON P. WEBER,

                                                     OPINION AND ORDER

                    Plaintiff,

                                          13-cv-396-bbc

       v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Jason P. Weber is appealing from an adverse decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security. He is seeking Social Security Disability and Supplemental Security Income benefits on the ground that he is disabled from working because of a number of disabling conditions. He asks the court to grant him benefits outright or, failing that, to order a remand. Defendant concedes that plaintiff suffers from various medical conditions but maintains that they are not disabling, whether considered individually or in combination.

Plaintiff complains of disabling pain in his shoulders, leg, knee, back, wrists and hands. The administrative law judge found that most of these complaints of pain were not

---

[1] Plaintiff brought this appeal against Michael J. Astrue, Commissioner of Social Security, who is no longer in office. Under Fed. R. Civ. P. 25(d), his successor, Carolyn W. Colvin, Acting Commissioner, will be substituted as defendant.

1

supported by objective medical evidence, that what pain plaintiff did have was controlled effectively by medication and that plaintiff's statements to the contrary were not credible. From my own review of the record and the parties' briefs, I conclude that substantial evidence supports the administrative law judge's findings.  Accordingly, judgment will be entered for the commissioner.

RECORD EVIDENCE

Plaintiff Jason P. Weber was born in November 1971.  He finished the eleventh grade of school and last worked at a warehouse that closed in 2008.  AR 47.  His work at the warehouse would be classified as "heavy" for Social Security purposes.

Plaintiff filed a previous action in this court, Weber v. Astrue, 12-cv-81, after he was denied disability benefits by an administrative law judge on November 17, 2010.  He appealed the decision in 2012 but it was denied as untimely.  On December 16, 2010, he filed new applications for disability insurance benefits and supplemental security income, alleging disability beginning July 29, 2008.

A hearing on plaintiff's second application was held on April 17, 2012.  He appeared in person, with counsel.  A vocational expert was present as well.  At the time, he amended his onset date to December 13, 2011, the date on which his doctor gave him a diagnosis of fibromyalgia.

Plaintiff testified that he had constant chronic back pain for which he had some relief from medications and ice packs, that he had to lie down for at least three hours during each

day, that he was taking medication for fibromylagia, for spasms, high blood pressure and diabetes and that the medication caused drowsiness. AR 53. He had had some steroid injections that had given him no more than a week or two of relief. AR 54. He used a cane, but found it to be of little help because of his shoulder pain. AR 55. He had arthritis in his knees, which made it hard to walk, and in his shoulders, which made it hard to hold onto things. AR 56. He testified he had carpal tunnel syndrome, back spasms that made it difficult to sit and was able to stand for only about 15-20 minutes. AR 59. As to daily activities, plaintiff said he could not mow his yard, do laundry or dishes or shave his face without help. AR 60.

The vocational expert testified that plaintiff had previously worked in semiskilled jobs that would be classified as heavy work and had no transferable skills. AR 63-64. When asked by the administrative law judge whether a person of plaintiff's age, education, work experience and evidence in the record could perform any past relevant work if he was limited to lifting no more than 10 pounds, could sit for six out of eight hours, stand for two out of eight hours and do occasional overhead lifting with both upper extremities, the expert said he could not. AR 65. The expert added, however, that plaintiff could perform sedentary jobs such as telephone sales representative or surveillance system monitor. Id. The person could do these jobs if he were limited to simple, routine and repetitive jobs, could carry out and remember simple instructions, respond appropriately to supervisors, coworkers and the public and adjust to routine changes in the work setting. Id. He would not be able to perform the jobs if he would be absent three or more random days a month for pain or for

psychological problems or if he could not sit two hours or more or could not stand for two hours or more.  AR 65-67.

Following the hearing, the administrative law judge issued his decision, concluding hat plaintiff retained the residual functional capacity to perform full-time sedentary work with certain restrictions that the vocational expert had testified would not preclude him from finding jobs in the economy.  The administrative law judge found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 13, 2011, and that he had the severe impairments of fibromyalgia, lumbar degenerative disc disease post 2007 lumbar fusion surgery, degenerative joint disease of the left shoulder, degenerative joint disease of the right knee and left foot arthritis.  AR 17.  He concluded that none of these impairments met a listing in 20 C.F.R. Part 404, Subpart P, App. 1.  Plaintiff's post operative imaging showed only mild degenerative disc disease at L3-4, with no evidence of fusion failure; his left shoulder x-rays showed mild degenerative joint changes at the acromioclavicular joint (the joint at which the clavicle meets the shoulder), but his electromyogram and his nerve conduction study were normal and subsequent testing was unremarkable.  Id.  In addition, plaintiff had some arthritic changes in his left foot and he had been given a diagnosis of fibromyalgia after an examination showed 12/18 tender points.

Plaintiff reported having had hypertension, diabetes mellitus and hearing loss at various times but the administrative law judge found no medical findings to support a conclusion that any of these conditions constituted severe impairments.  The administrative law judge noted that plaintiff had alleged cervical degenerative spondylosis (degenerative

osteoarthritis of the joints between the center of the spinal vertebrae and the neural foramina or both; the foramen is the opening between the vertebrae through which spinal nerve roots travel and exit to other parts of the body) but his cervical MRI was unremarkable; he had a diagnosis of celiac disease but no evidence of any ongoing symptoms secondary to the disease; and he said he had carpal tunnel syndrome but the objective testing for the syndrome was negative.  Id.

When assessing plaintiff's mental condition, the administrative law judge found that plaintiff had some depressive symptoms associated with his physical complaints.  He had mild limitations in activities of daily living and in concentration that did not prevent him from caring for his children, preparing meals, driving and shopping for groceries.  AR 18. Although he reported poor attention and poor task completion, he was handling childcare duties and other activities with no apparent problem.  Id. He had no limitations in social functioning and episodes of decompensation of any duration.  Id.  He had never sought mental health treatment from a specialist and was not currently taking any psychotropic medication.  The administrative law judge concluded that plaintiff had no impairment or combination of impairments that met or equaled the severity of a listed impairment, id., and that he had the residual functional capacity to perform sedentary work with the restrictions the vocational expert had identified.  AR 19.

The administrative law judge explained in detail why he did not believe that plaintiff's alleged disabilities were as severe as he made them out to be:

1. Plaintiff's description of his symptoms and limitations was unpersuasive and

extreme in comparison to the objective abnormalities.  For example, treatment notes from Dr. Bryan Tepper and Dr. Gregory Love in September 2011, three months before plaintiff's onset date, indicated that plaintiff's pain was well controlled by medication, he was able to engage in his daily activities with no adverse effects and he had normal range of motion, strength and reflexes and no tenderness.  AR 20 (citing Tepper rep., AR 617; Love rep., AR 622).

2. The record included no new evidence that would support a change in plaintiff's condition following the previous adverse decision on his disability application.  In November 2010, plaintiff was complaining of shoulder pain, muscle spasm and generalized diffuse tenderness, but when he had complained to Dr. Kolste of back muscle spasms and left leg pain the month before, Kolste had observed no clinical findings to support a diagnosis.  Id. (citing Kolste rep., AR 468-69).   In April 2011, plaintiff told Dr. Harlan Edelamn that he had had 50% improvement in his left shoulder symptoms, although the symptoms worsened with overhead activity.   Objective testing did not disclose anything other than some inflammation and a possible partial tearing, later described as "unremarkable."  Id. (citing Edelman rep., AR 511, 514).  In October 2011, the results of plaintiff's physical examination at the pain center showed that he was getting pain relief from his medications, had normal range of motion and was able to engage in activities of daily living.  Id. (citing Love rep., AR 622-23).  In February 2012, after plaintiff's fibromyalgia had been diagnosed, Dr. David Hartsuch found plaintiff negative for musculoskeletal, neurolgical and psychiatric problems. Id.  (citing Hartsuch rep., AR 698).

3. An occupational therapy evaluator who undertook an evaluation of plaintiff observed that he did not favor his left leg consistently but sometimes favored his right one, did not use his cane consistently or correctly and his "self-limiting performance" suggested that he might have more ability in some areas than he demonstrated in his evaluation and that the evaluator found that plaintiff had the functional ability to perform sedentary to light level work. AR 20 (citing Jan. 24, 2012 Weber-Schwarzenberger rep., AR 628, 631-32).

4. Office notes of plaintiff's visits to doctors showed numerous occasions on which he did not complain of fatigue, of having to lie down daily or of medication effects.   AR 21.

5. Evidence that plaintiff stopped work in 2008 because his employer closed down, not because his physical problems required him to stop. He started collecting unemployment compensation without reporting any work restrictions, AR 49 (hearing testimony), AR 237-46) and reported applying for jobs as recently as September 2011.

6. One of plaintiff's treating physicians, Dr. Love, reported that he had been seeing plaintiff about every 3-4 months since 2007 for chronic low back, left leg pain, lumbar spondylosis. He did not suggest that plaintiff's condition had changed since 2006 and he chose not to complete a questionnaire on possible physical limitations plaintiff might have. AR 591-95.

OPINION

Plaintiff contends that the administrative law judge lacked substantial evidence to support his conclusion and that he misconstrued the medical evidence and plaintiff's testimony; he failed to evaluate plaintiff's fibromyalgia properly; and he erred in assessing

7

plaintiff's residual functional capacity.


A. <u>Medical Evidence</u>

1. <u>Misconstruction of evidence</u>

Under this heading, plaintiff takes issue with the administrative law judge for (1) relying on doctors' statements in finding a lack of objective evidence for plaintiff's pain and relying on the lack of objective evidence to support plaintiff's description of his symptoms and limitations without considering that the doctors continued to treat plaintiff for pain; (2) "cherry picking" the occupational therapy evaluator's report that rated plaintiff's performance on the test "marginally consistent," without taking into account either the difficulties plaintiff had in using his cane because of his shoulder problems or the possibility that his gait inconsistencies could be caused by the problems he had in both legs; and (3) cherry picking the entire medical record, looking for evidence that would support his finding that plaintiff's pain was controlled by medication and his activities of daily living were not affected, without considering that pain symptoms can wax and wane.  Plaintiff may object to the administrative law judge's reading of the record as "cherry picking," but he cannot point to any evidence that refutes the conclusions that the administrative law judge reached.  The administrative law judge never said that plaintiff did not have pain; he said that plaintiff lacked any objective evidence to support his claim that his pain was disabling.  That conclusion is supported by the record evidence on which the administrative law judge relied, which includes far more reasons to doubt plaintiff's credibility than the lack of objective evidence, important as that

8

is.

Plaintiff also criticizes the administrative law judge's boilerplate finding that the Court of Appeals for the Seventh Circuit has criticized repeatedly to no avail: "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." As the court of appeals pointed out in Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012), proceeding in this way "gets things backward." Doubts about credibility are critical to the assessment of the claimant's ability to work, "yet the boilerplate implies that the determination of credibility is assessed without regard to credibility, even though it often can't be." Id. at 645-46.

In this instance, however, the administrative law judge followed up his residual functional capacity finding with a thorough explanation of his reasons for finding a lack of credibility in plaintiff's allegations about the symptoms of his impairments and resulting limitations. Pepper v. Colvin, 712 F.3d 351, 367-68 (7th Cir. 2013) (although discussion followed residual capacity finding, administrative law judge's discussion of claimant's testimony was sufficient to allow reviewing court to examine evidence he relied upon in finding plaintiff not fully credible). As in Pepper, in this case, the administrative law judge had sufficient evidence on which to make his finding.

### B. Failure to Undertake Evaluation of Plaintiff's Fibromyalgia

Plaintiff contends that the doctors' eventual identification of fibromyalgia is evidence

that his reports of pain were not exaggerated.  He asserts that the administrative law judge erred in failing to consider the longitudinal nature of the condition and evaluate its effects on plaintiff, particularly his ongoing complaints of pain, fatigue and bowel problems.  Had the administrative law judge done so, he would have realized that a 25% decline in work and three absences a month would preclude all employment.   Plaintiff objects to the administrative law judge's failure to conduct an analysis of the effects of his fibromyalgia as he is required to do under SSR 12-2p, which includes the consideration of "longitudinal information."   Social Security Ruling 12-2p did not go into effect until after the administrative law judge issued his decision in plaintiff's case, but he noted it implicitly when he said that plaintiff received the diagnosis in December 2011 and that there had been no previous mention of it in the medical record.  In other words, there was no longitudinal record he could evaluate.  He did note that the record showed no evidence that the new diagnosis "translated into any worsening of [plaintiff's] symptoms," AR 20, as shown by the Dr. Hartsuch's February 2012 treatment notes stating that plaintiff's musculoskeletal, neurological and psychiatric examinations continued to be negative.

The administrative law judge discussed plaintiff's rheumatological consultations with Dr. Jilaine Bolek-Berquist in December 2011 and in February 2012, noting that the doctor had found no manipulative limits, but that she had also stated that plaintiff could work no more than four hours a day, would need to use a cane and would have to take unscheduled breaks hourly without identifying any objective evidence to support her statement.  AR 21. The administrative law judge found her opinions unreliable because she had also stated that

all of plaintiff's testing was negative, that plaintiff had carpal tunnel syndrome (despite having had a negative EMG test for the syndrome) and that plaintiff experienced drowsiness as a side effect of his medication, although this last finding was not reflected consistently in his treatment record and other doctors had noted that plaintiff's pain is well controlled without side effects and without limiting him from his daily activities.  Id.

## C. Residual Functional Capacity

Plaintiff contends that the administrative law judge erred in assessing plaintiff's residual functional capacity because he failed to consider both medical and non-medical evidence and the aggregate effect of plaintiff's ailments.  In particular, plaintiff says, he did not account for the number of times plaintiff would have to be absent from work because of flareups of his pain, his fatigue or his bowel problems.  The administrative law judge had no reason to give any additional explanation for not accepting plaintiff's argument that he would need numerous absences as far as his pain and his fatigue were concerned once he found that plaintiff's pain and fatigue were not the severe problems plaintiff portrayed them as being. Moreover, the medical records showed that plaintiff's pain was well controlled by medication. As for the bowel problems, plaintiff has not pointed to any evidence to show that these problems would be long lasting or so severe as to cause him to miss work on regular basis, although it is his duty to make that showing.  Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2008) (it is plaintiff who "bears the burden of producing medical evidence that supports [his] claims of disability").

11

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and supplemental security income is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 28th day of February, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

12